UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-RB-0306 (BNB)

RICHARD CAMPFIELD, individually and d/b/a
ULTRA BOND LICENSING and d/b/a
ULTRA BOND WINDSHIELD REPAIR AND REPLACEMENT; and
ULTRA BOND, INC., a California corporation authorized to do business in Colorado,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation;
LYNX SERVICES, L.L.C., formerly known as
LYNX SERVICES FROM PPG, L.L.C., a Kansas limited liability company,

      Defendants.

_____

## ORDER CONCERNING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

_____

**Blackburn, J.**

      This matter is before me on the following motions: 1) defendant State Farm's motion for summary judgment [#141], filed July 28, 2005; 2) defendant Lynx Services' motion for summary judgment [#161], filed July 28, 2005; 3) plaintiffs' motion to supplement the record [#197], filed October 18, 2005; and 4) plaintiffs' second motion to supplement [#210], filed November 1, 2005.  I grant the motions.

## I.  JURISDICTION & STANDARD OF REVIEW

      I have diversity jurisdiction over this case under 28 U.S.C. § 1332.  In fashioning my ruling I have judicially noticed all adjudicative facts in the file and record of this action *pro tanto*.  I have considered the pleadings, discovery, and affidavits on file, together with the arguments advanced and authorities cited by the parties in their respective briefs. I have employed the analysis required by apposite law. ***See***

1

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Redmon v. United States*, 934 F.2d 1151,1155 (10th Cir. 1991); and *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994).

## II.  FACTS

Defendant, State Farm Mutual Automobile Insurance Company, sells auto insurance, including coverage for damage to windshields.  Defendant, Lynx Services, LLC, administers State Farm's windshield and other glass-only claims program. Plaintiff, Richard Campfield, operates an auto glass shop in Grand Junction, Colorado. Campfield owns plaintiff, Ultra Bond, Inc.  Ultra Bond licenses the use of a methodology for repairing windshield cracks known as the Ultra Bond process.  Ultra Bond also sells supplies used in the Ultra Bond process.

Campfield and Ultra Bond allege that State Farm and Lynx have implemented a six inch criterion for handling claims for windshield repair.  Under this criterion, the plaintiffs allege, State Farm and Lynx recommend that a windshield should be replaced rather than repaired when the windshield has a crack that is more than six inches long. The parties generally refer to a crack that is more than six inches long as a "long crack." The plaintiffs allege that telephone scripts used by State Farm and Lynx mislead State Farm insureds who are making a claim concerning a windshield with a long crack.  Such insureds are not automatically told that a repair of the crack would be free, because the State Farm policy waives the deductible for a long crack repair.  Rather, the Lynx representative recommends that the windshield be replaced, and begins to process the

claim as a replacement.  Only if the insured inquires about a repair does the Lynx representative provide information about repairs, including the insurance coverage available.  According to the plaintiffs, when an insured is making a claim for a stone chip or a crack shorter than six inches State Farm and Lynx inform the insured about the benefits of repair.  These benefits include the fact that the insured does not pay a deductible when a windshield is repaired, and elimination of the risk that a new windshield will be installed improperly.

Campfield and Ultra Bond claim that the Ultra Bond process is an effective technology for the repair of long cracks in windshields.  The plaintiffs claim that the defendants' implementation of their six inch criteria for windshield repair has interfered with the plaintiffs' ability to license the Ultra Bond process.  This is so, the plaintiffs allege, because a large proportion of the windshield repair and replacement market is processed through State Farm's glass claims process.  Based on the defendants' implementation of their six in criteria, the plaintiffs assert two claims: 1) unfair or deceptive trade practices, in violation of the Colorado Consumer Protection Act (CCPA), §§6-1-101 to 6-1-115, C.R.S.; and 2) tortious interference with contract and with prospective business relations.  The defendants argue that they are entitled to summary judgment on both of these claims.  Additional facts are discussed below.

### III.  STATUTES OF LIMITATION

State Farm and Lynx both argue that the plaintiffs' claims are barred by the applicable statutes of limitation.  The parties agree that a CCPA claim must be brought within three years of the date "on which the false, misleading, or deceptive act or practice occurred . . . ."  §6-1-115, C.R.S.  A claim of tortious interference with contract, or with prospective business relations, must be brought within two years after the cause

of action accrues.  §3-80-102, C.R.S.  Such a claim accrues on the date "both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  §13-80-108(1), C.R.S.

The defendants note that the plaintiffs were aware of the facts on which they base their claims more than three years before the plaintiffs filed their Complaint on February 19, 2003.   Between February, 1997, and January, 2000, Campfield wrote twelve letters to the plaintiffs complaining that the defendants' six inch criterion was illegal and was injuring the plaintiffs' business.  *State Farm motion for summary judgment*, Exhibits B-9 to B-11.  In one letter, dated December 12, 2999, Campfield wrote:

> Not paying or short paying for Long Crack Repair is . . . "Tortious Interference."  *   *   *  Telling the insured that you do not cover Long Crack Repair without a valid reason could also add Consumer Fraud to the list . . . .  Exhibit B-10 (letter dated December 21, 1999).

Based on these letters, and on other statements by the plaintiffs, the defendants argue that the plaintiffs were aware of the basis for their claims more than three years before the plaintiffs filed their Complaint in this case.  The defendants seek dismissal of the plaintiffs' remaining claims on this basis.

Acknowledging the applicable limitations periods, the plaintiffs say they are seeking relief for the defendants' alleged tortious interference based on the defendants' actions from February 19, 2001 forward, and for their CCPA claims beginning on February 19, 2000.  In essence, the plaintiffs claim that the defendants' continuing implementation of the six inch criterion constitutes continuing and repetitive tortious acts, and deceptive acts under the CCPA.  The evidence in the record is sufficient to support the plaintiffs' contention that State Farm and Lynx have implemented the six

inch criterion since 1997, and continue to implement that criterion.  No later than December, 1999, the plaintiffs were aware that the implementation of this policy supported, in their view, claims for tortious interference with contract and prospective business relations, and under the CCPA.   The key question is whether the plaintiffs can seek relief based on actions by the defendants which took place within the relevant periods of limitation.

The Colorado courts have addressed the application of varying forms of the continuing violation doctrine to statutory limitations periods.  *See, e.g., Hoery v. U.S.*, 64 P.3d 214, 218 - 223 (Colo. 2003); *Harmon v. Fred S. James & Co.*, 899 P.2d 258, 260-262 (Colo. App. 1994).  I find that the circumstances in *Harmon* are analogous to this case, and that the rule applied in *Harmon* controls this case.  In *Harmon*, the plaintiff brought an insurance bad faith claim based on the defendant insurance company's alleged failure to make timely benefit payments to the plaintiff.  On October 19, 1987, the plaintiff's attorney sent a letter to the insurance company claiming that the insurer was acting in bad faith regarding the payment of certain benefits to the plaintiff. The disputes persisted, and the plaintiff filed a lawsuit on June 4, 1990.  A two year period of limitations was applicable to the insurance bad faith claim.  899 P.2d at 260.

The plaintiff argued that the continuing violation doctrine permitted her to seek relief for actions taken by the defendant more than two years before she filed her complaint.

> Under the "continuing violation" doctrine, if an employer has engaged
> in a series of unlawful acts over an extended period of time, a plaintiff may
> be allowed "to get relief for a time-barred act by linking it with an act that is
> within the limitation period."

899 P.2d at 261 (*quoting Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992)).  In

deciding whether the continuing violation doctrine is applicable, the "determinative

question is whether the defendant's acts were related closely enough to constitute a

'continuing violation' or were merely discrete, isolated, and completed acts which must

be regarded as individual violations." *Id*. (internal quotation and citation omitted).  A

series of unlawful acts can be viewed properly as a 'continuing violation' only if their

character was not apparent when they were committed but became so when viewed in

the light of the later acts." *Id*. (internal quotation and citation omitted).

In this case, as in *Harmon*, the nature of the defendants' actions was clear to the

plaintiffs no later that December, 1999.  The defendants' later actions did not serve to

clarify the nature of the defendants' actions.  Thus, the continuing violation doctrine

does not serve to expand the time period encompassed by the plaintiffs claims beyond

the applicable statutory limitations periods.  The plaintiffs do not seek such an

expansion.  The defendants' have continued to apply the six inch criterion during the

time window defined by the applicable statutes of limitation.  This criterion is

implemented, according to the plaintiffs, each time a State Farm insured makes a claim

based on a long crack. The plaintiffs' claims arise from the continuation of this practice

during the relevant periods of limitation.  To the extent the defendants' actions during

the relevant limitations period have been wrongful, and have caused the plaintiffs' harm,

those actions constitute distinct actions for which the limitations period began to run at

the time of those actions.  *Id*. at 262.  Absent such an application of the periods of

limitation, the defendants could continue their pattern of allegedly wrongful action with

impunity once the period of limitations expired on actions more than three years in the

past.  Periods of limitation are not meant to shield current or recent conduct in such a fashion.

To the extent the plaintiffs' CCPA claim is based on actions prior to February 19, 2000, that claim is barred by the applicable statute of limitations.  To the extent this claim is based on actions after February 19, 2000, those actions constitute separate acts that are not barred by the statute of limitations.  Similarly, to the extent the plaintiffs' tortious interference claim is based on actions prior to February 19, 2001, that claim is barred by the applicable statute of limitations.  To the extent this claim is based on actions after February 19, 2001, this claim is not barred by the statute of limitations.

## IV.  COLORADO CONSUMER PROTECTION ACT

To establish a private cause of action under the CCPA, the plaintiffs must show that: 1) the defendants engaged in an unfair or deceptive trade practice; 2) in the course of their business; 3) which significantly impacted the public as actual or potential consumers of State Farm or Lynx's goods or services; 4) the plaintiffs suffered an injury in fact to a legally protected interest; and 5) the practice caused the injury.  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining*, 62 P.3d 142, 146 -147 (Colo. 2003).

In this case, the plaintiffs claim the defendants act deceptively when an insured seeks coverage for a windshield crack that is longer than six inches.  When an insured makes such a claim, the defendants allegedly do not automatically disclose that: 1) the repair of such damage is covered under the State Farm policy; 2) an insured does not have to pay any deductible if the windshield is repaired rather than replaced; and 3) certain risks are presented when a car's windshield is removed and replaced.  Evidence in the record indicates that when a Lynx claims representative is told that a

State Farm insured has a windshield crack longer than six inches, the Lynx

representative will say "State Farm recommends that the windshield – that you would

consider replacing this windshield." *Response to State Farm's motion for summary

judgment*, Exhibit 4 (Martin deposition), 35:6 - 35:20.  In that circumstance, the Lynx

representative will not provide information about the potential hazards of windshield

replacement or of windshield repair.  *Id.*, 35:21 - 36:1.  After the Lynx representative

recommends replacement, the claim will be processed as a replacement.  *Id.*, 36:16 -

36:19.  However, if an insured asks about a repair, the insured will be given information

about repairs, about State Farm's coverage for repairs, and the insured will be permitted

to choose to repair the windshield rather than to replace it.  *Response to State Farm's

motion for summary judgment*, Exhibit 4 (Martin deposition); Exhibit 12 (Haygood-

Gideon deposition), exhibit A (telephone transcript).

### A.  Applicability of CCPA to Lynx

Lynx argues that the CCPA does not apply to Lynx because the public is not an

actual or potential consumer of Lynx's services.  Lynx says State Farm purchases

Lynx's services as a claims processor for glass claims, and that nothing in the record

indicates that the public is a consumer of Lynx's services.  I disagree.  Although State

Farm insureds with glass claims do not pay directly for Lynx's claims processing

services, those insureds do use or consume Lynx's claims processing services when

the insureds make claims for glass coverage.  It is Lynx personnel who discuss the

claim with the insured, and who process the claim on behalf of the insured.  By using

Lynx's services, an insured can make a claim on their State Farm insurance policy.  The

fact that State Farm pays Lynx for its claim processing services does not mean that the

State Farm insureds do not consume Lynx's services.  The cases cited by Lynx do not indicate that under these circumstances the public is not a consumer of Lynx's services.

### B.  Knowing & Intentional Deception

The plaintiffs argue that the deceptive practice at issue "is that the insured consumer with a long windshield crack is sold a new windshield at greater personal cost and with greater safety risks because its own insurance company or adjuster recommends this sale without disclosing that there is a cost free and probably safer alternative to repair the crack."  *Response to State Farm's motion for summary judgment*, p. 16.  To form the basis of a CCPA claim, a misrepresentation must be made "either with knowledge of its untruth, or recklessly and willfully made without regard to its consequences, and with an intent to mislead and deceive . . . ."  ***Rhino Linings***, 62 P.3d at 147.  A failure to disclose material information concerning goods or services can be viewed as a misrepresentation under the CCPA.  §6-1-105(u), C.R.S.  Lynx and State Farm argue that the plaintiffs have not come forward with any evidence that Lynx and State Farm knowingly and intentionally make misrepresentations when implementing the State Farm six inch criterion.

Lynx notes that State Farm provides Lynx with the rules for processing windshield claims.  *Lynx motion for summary judgment*, Exhibit 1, ¶¶ 10, 18-20.  State Farm provides the telephone scripts used by Lynx personnel.  *Id.*  Lynx claims that it cannot have the requisite knowledge or intent when it is State Farm that determines the rules for claims processing, and what statements are made to policy holders who make claims.  *Lynx motion for summary judgment*, p. 8.  I disagree.  If a Lynx representative knows that a statement is a misrepresentation, then the representative knowingly makes a misrepresentation anytime the Lynx representative passes on such

information.  The fact that a person knowingly makes an inaccurate statement at the direction of another does not make the statement any more accurate, and does not necessarily mean that the person did not know of the inaccuracy.

However, I conclude that a reasonable fact finder could not find that State Farm's recommendation that a windshield with a long crack be replaced is a knowing and intentional misrepresentation of State Farm's insurance services.  It is undisputed that Lynx representatives, on behalf of State Farm, recommend the replacement of a windshield with a long crack.  The evidence cited by the plaintiffs indicates that the Lynx representative says that "State Farm recommends that the windshield – that you would consider replacing this windshield."  *Response to State Farm's motion for summary judgment*, Exhibit 4 (Martin deposition), 35:6 - 35:20.  State Farm's recommendation is based on State Farm's study of the feasability of repairing long cracks, and the acceptability of such repairs to customers.  *State Farm's motion for summary judgment*, p. 15.  Further, there is no industry standard that recommends such repairs.  *Id*.  State Farm and Lynx's use of the words recommend and/or consider clearly indicate that alternatives are available.  It is undisputed that the repair alternative is explained to policy holders who ask about the alternatives to replacement.  *Response to State Farm's motion for summary judgment*, Exhibit 4 (Martin deposition); Exhibit 12 (Haygood-Gideon deposition), exhibit A (telephone transcript). Given these undisputed facts, I conclude that a reasonable fact finder could not find that State Farm or Lynx knowingly and intentionally conceal the nature of State Farm's coverage.  Rather, they simply recommend a particular coverage option.  This recommendation does not amount to knowing and intentional concealment or misrepresentation.

### C.  Significant Public Impact

Both State Farm and Lynx argue that the plaintiffs have not cited any evidence

that the alleged misrepresentations based on the six inch criterion have a significant

impact on the public as actual or potential consumers of State Farm or Lynx's goods or

services.  *Rhino Linings*, 62 P.3d 142, 146 -147.  As the parties note, three key factors

should be considered in determining whether a challenged practice has a significant

public impact under the CCPA: 1) the number of consumers directly affected by the

challenged practice; 2) the relative sophistication and bargaining power of the

consumers; and 3) evidence that the challenged practice has previously impacted other

consumers or has significant potential to do so in the future.  *Id*. at 149.  The plaintiffs

claim that the "'public impact' of the alleged practice here is indisputable."  *Response to*

*Lynx's motion for summary judgment*, p. 9.  However, in responding to State Farm and

Lynx's motions for summary judgment, the plaintiffs cite almost no evidence to support

their claim of public impact.  *Id*., pp. 7-10; *Response to State Farm's motion for*

*summary judgment*, p. 18.

1.  Number of Consumers.  The plaintiffs cite no evidence which demonstrates

the number of consumers directly affected by the practice they challenge in this case.

*Response to Lynx's motion for summary judgment*, pp. 7-10; *Response to State Farm's*

*motion for summary judgment*, p. 18.  The plaintiffs note that Lynx and State Farm

handle 1.7 million glass claims each year, and that State Farm has about 30-40 million

policyholders with glass coverage.  *Response to Lynx's motion for summary judgment*,

Exhibit 3 (Williams deposition), 61:6-10.  This evidence gives no indication of the

number of State Farm insureds who make claims for long cracks in their windshields.  In

their recitation of the facts, the plaintiffs claim that the "vast majority of windshield

11

replacements are replaced because the damage is a long crack." *Id.*, p. 2.  However, the affidavits cited by the plaintiffs do not support this proposition, and certainly do not indicate the number of long crack replacements that occur.

Apparently, the plaintiffs ask the court to indulge the presumption that many State Farm insureds make claims based on long cracks in their windshields.  Such a presumption is not a basis on which a reasonable finder of fact could conclude that a significant number of consumers are adversely affected by the defendants' practice. Absent some specific evidence which demonstrates the number of consumers affected by State Farm's practice, a reasonable fact finder could not conclude that the six inch criterion affects a significant number of consumers.  ***See, e.g., Coors v. Security Life of Denver Ins. Co.***, 91 P.3d 393, 399 (Colo. App. 2003) (insurance company letter to 200 of 20,000 policy holders could not constitute public impact for purpose of CCPA), ***aff'd***, 112 P.2d 59 (Colo. 2005) (court evenly divided on this issue).

2) Relative Sophistication and Bargaining Power of Consumers.  The defendants do not argue that the consumers at issue, State Farm insureds making claims based on long cracks in their windshields, have a high degree of sophistication on the question of whether such cracks are repairable, or on the benefits available under the State Farm's policies.  The same is true for the consumers' relative bargaining power.  For the purpose of the motions for summary judgment, I will assume that there is sufficient evidence to support the conclusion that the relevant consumers are relatively unsophisticated on the relevant issues, and that they have less bargaining power than State Farm.

3) Previous impact on other consumers or significant potential to impact consumers in the future.  The plaintiffs note that State Farm and Lynx have used the six

inch criterion for several years, and they continue to use that criterion.  Thus, the criterion has had a previous impact on consumers, and has the potential to impact consumers in the future.  The plaintiffs also say that an insured pays a deductible of 100 dollars to 500 dollars when a windshield is replaced, but pays no deductible when the windshield is repaired.  *Response to Lynx's motion for summary judgment*, p. 9. Although the plaintiffs cite no evidence for this proposition, the defendants do not dispute that this is true.  Paying a deductible when a windshield is replaced is a financial impact on a consumer.  However, as discussed above, the record contains no evidence demonstrating the number of consumers impacted by this practice.  The plaintiffs have not cited evidence that shows how many consumers have been impacted in the past, or how many may be impacted in the future.  Absent evidence that demonstrates the number of consumers affected, in the past or in the future, a reasonable fact finder could not conclude that the defendants' practice has a significant public impact.

### D.  Conclusion

Viewing the evidence in the record in the light most favorable to the plaintiffs, I find that a reasonable fact finder could not conclude that the defendants have knowingly and intentionally deceived State Farm insureds in implementing State Farm's six inch criterion.  I also find that a reasonable fact finder could not conclude that the alleged misrepresentation has had a significant public impact in the past, or will have such an impact in the future.  The defendants are entitled to summary judgment on the plaintiffs' CCPA claim.

## V.  TORTIOUS INTERFERENCE

The defendants argue that the undisputed facts in the record do not support the plaintiffs' claim of tortious interference with contract and with prospective business relations.  To prove a claim of tortious interference with contract, the plaintiffs must show that: 1) plaintiffs had a contract with a third party; 2) defendants knew or reasonably should have known of the contract; 3) defendants intentionally induced the other party to the contract not to perform its contractual duty; 4) the defendants' actions were improper; and 5) the defendants' actions caused the plaintiffs damage.  **CJI-Civ. 4th** 24:1.  Intentional interference with prospective business relations requires essentially the same proof, except the first element requires proof of the existence of a tangible prospective business relationship between the plaintiffs and another.  ***See, e.g., Klein v. Grynberg***, 44 F.3d 1497, 1506 (10th Cir. 1995).  A tangible prospective relationship "exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope."  *Id*.  I conclude that the plaintiffs have not come forward with evidence that demonstrates a genuine issue of material fact concerning elements three and four.  Given the plaintiffs' lack of evidence on these two key elements, I do not examine the other elements of the plaintiffs' tortious interference claim.

The evidence in the record indicates that Ultra Bond had about 475 licensees at the peak of its business in May, 1994, and that the current number of licensees is about 100.  *State Farm's motion for summary judgment*,  Exhibit B-8 (Campfield deposition), 66:17 to 67:19; B 16.  The plaintiffs claim State Farm's six inch criterion caused this decline in the plaintiffs' business, and continues to cause potential licensees to decline the opportunity to purchase an Ultra Bond license.   The defendants argue that there is

no evidence in the record that any of Ultra Bond's license contracts has been breached, or that any breach was caused by the actions of State Farm or Lynx.  State Farm also notes that Ultra Bond's license contracts are nonexclusive, terminable at will, and permit licensees to obtain tools and supplies form any source.  *State Farm's motion for summary judgment*, Exhibit B-14 (Campfield deposition), 34:14 to 38:16.  Under these terms, State Farm argues, the plaintiffs do not have any legitimate expectation that its licensee relationships will continue for any defined period of time.

## A.  Breach of Contract

The plaintiffs claim that they "will show at trial that hundreds of licensees have breached or terminated their license contracts due to the restrictive long crack repair criteria."  *Response to State Farm's motion for summary judgment*, p. 9.  In response to a motion for summary judgment arguing that the plaintiff lacks proof on a key element of a claim, a plaintiff cannot respond with a promise of proof in the future.  The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); **Celotex Corp**., 477 U.S. at 324.

The plaintiffs cite the affidavits of three witnesses in support of their contention that hundreds of licensees have breached or terminated their license contracts due to the restrictive long crack repair criteria:

> **1.** Kerry Wanstranth is part owner of a company called Glass Technology, Inc.  *Response to State Farm's motion for summary judgment*, Exhibit 6. Wanstranth indicates that Glass Technology has engaged in the windshield repair business.  Wanstranth states that the State Farm/Lynx repair criteria and telephone scripting led to the exclusion of long crack repair as a repair option and have "almost eliminated the market for long crack repair."  *Id.*, ¶ 3.

> **2.** Joel Morse says he has been in the windshield business since 1992, and was an Ultra Bond distributor from 1996 to 1998.  *Response to State*

*Farm's motion for summary judgment*, Exhibit 5, ¶¶ 1, 3.  Morse says he had to cancel his contract with Ultra Bond because State Farm and Lynx/PPG "took control of the industry and virtually eliminated the Windshield Repair-Only business opportunity and the long crack repair market."

**3.** Gerald Holcomb says he has been in the windshield business since 1991.  *Response to State Farm's motion for summary judgment*, Exhibit 8, ¶ 1.  Holcomb says the State Farm/Lynx long crack repair criteria "have almost eliminated the market for long crack repair and is the main reason why I had to cancel my license with Ultra Bond."  *Id.*, ¶ 3.

None of these statements evidences a breach of any Ultra Bond license contract.  At most, they demonstrate the termination of two license contracts.  According to the two licensees who terminated their contracts, their terminations were caused by the defendants' long crack repair practices because those practices nearly eliminated the market for long crack repair.  Nothing in the record demonstrates that any of these Ultra Bond licensees breached their license contract.

### B.  Improper Action

The plaintiffs argue that contracts terminable at will are entitled to some protection form tortious interference under Colorado law.  "The Colorado rule is that an action for damages will lie against one who intentionally and without justification interferes with or induces a breach of a contractual arrangement between others, even though the contract is terminable at the will of either party."  ***Zelinger v. Uvalde Rock Asphalt Co.***,  316 F.2d 47, 50 -51 (10th Cir. 1963) (citations omitted; collecting Colorado cases).  However, in the context of competitive business relations, this protection is limited.  For example, in ***Amoco Oil Co. V. Ervin***, the plaintiffs alleged that Amoco imposed costly lease terms on its independent dealers (the plaintiffs), while providing economic advantages to stores owned by Amoco.  908 P.2d 493 (Colo. 1995).  The plaintiffs claimed Amoco sought to move customers from the plaintiffs' independent

stores to company operated stations, and that Amoco improperly had interfered with the independent dealers' prospective business relations with their customers.  908 P.2d at 500.

Relying on Section 768 of the Restatement (Second) of Torts, which defines intentional interference with contractual relations, the *Ervin* court concluded that Amoco's actions were not wrongful.  908 P.2d at 502.  Rather, Amoco's actions amounted to a proper use of economic pressure in business competition.  *Id*.  In the context of economic competition, a wrongful means is limited to actions such as physical violence, fraud, or civil or criminal prosecution as means of harming a competitor.  *Id*.  Absent evidence that Amoco had used a wrongful means, the plaintiffs could not prove their claim of tortious interference with prospective business relations.  *Id*. at 502-503.

In the present case, State Farm and Lynx are alleged to systematically steer insureds away from long crack repair and toward windshield replacement.  This is analogous to Amoco giving economic incentives to its company owned dealers, while imposing costly lease terms on its independent dealers.  The defendants' practices may make it difficult for the plaintiffs to retain current licensees, or to attract new licensees, but these practices constitute economic pressure, a legitimate tool in economic competition.  The defendants' practices do no constitute the kind of wrongful action that must be proven to establish intentional interference with contractual relations, or prospective contractual relations.

## C.  Conclusion

Absent evidence of a breach of an Ultra Bond license contract, or evidence that the defendants used any wrongful means to interfere with Ultra Bond's at will licensing

contracts, the defendants are entitled to summary judgment on the plaintiffs' tortious interference with contract claim, and on the plaintiffs tortious interference with prospective business relations claim.

## VI.  MOTIONS TO SUPPLEMENT

The plaintiffs have filed two motions to supplement in which they seek to supplement the record with affidavits from two former Lynx representatives.  The defendants object to the plaintiffs' efforts to supplement, noting that the plaintiffs never filed a motion under FED. R. CIV. P. 56(f) seeking additional time to supply affidavits that were not available to permit the presentation of affidavits essential to the party's opposition.  The defendants also note that the plaintiffs were slow to seek out this information.  I agree that the plaintiffs' efforts to obtain this information, given the scheduling deadlines in this case, have been less than diligent.

However, I have reviewed the two supplemental affidavits, and they do not change my findings or conclusions.  The affidavits do not tend to establish any of the elements of the plaintiffs' two remaining claims on which I found the evidence in the record to be insufficient to support the plaintiffs' claims.  For the sake of a compete record, and despite the plaintiffs' less than diligent efforts to present this evidence in a timely fashion, I will grant the plaintiffs' two motions to supplement the record.

## VII.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1)  That defendant State Farm's motion for summary judgment [#141], filed July 28, 2005, is **GRANTED**;

2)  That defendant Lynx Services' motion for summary judgment [#161], filed July 28, 2005, is **GRANTED**;

3)  That the plaintiffs' motion to supplement the record [#197], filed October 18, 2005, is **GRANTED**;

4)  That the plaintiffs' second motion to supplement [#210], filed November 1, 2005, is **GRANTED**;

5)  That all other pending motions are **DENIED** as moot;

6)  That the Trial Preparation Conference set for January 20, 2006, at 9:30 a.m., and the trial set for January 23, 2006, at 8:30 a.m. are **VACATED**;

7)  That the defendants are **AWARDED** their costs, to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

8) That **JUDGMENT SHALL ENTER** in favor of the defendants and against the plaintiffs on the plaintiffs' claim under the Colorado Consumer Protection Act (third claim for relief), and on the plaintiffs' tortious interference claim (fourth claim for relief); and

9) That this case is **DISMISSED**.

Dated December 12, 2005, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge